UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIAN SHAW,                                                              REPORT
                                     Plaintiff,                              and
                                                                    RECOMMENDATION
                     v.
                                                                    12-CV-0822A(F)
CAROLYN W. COLVIN,[1] Commissioner of
Social Security,

                                     Defendant.
_____

APPEARANCES:            LAW OFFICES OF KENNETH HILLER
                        Attorneys for Plaintiff
                        JAYA ANN SHURTLIFF, Of Counsel
                        6000 North Bailey Avenue
                        Suite 1A
                        Amherst, New York 14226

                        WILLIAM J. HOCHUL, JR.
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        KATHLEEN ANN LYNCH
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York 14202, and

                        STEPHEN P. CONTE
                        Regional Chief Counsel - Region II
                        KATRINA M. LEDERER
                        Assistant Regional Counsel
                        United States Social Security Administration
                        Office of the General Counsel, of Counsel
                        26 Federal Plaza, Room 3904
                        New York, New York 10278

---

[1]Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on December 20, 2012.  (Doc. No. 8).  The matter is presently before the court on Defendant's motion for judgment on the pleadings filed on May 20, 2013 (Doc. No. 10), and Plaintiff's motion for judgment on the pleadings or alternatively, for remand for further development of the record.  (Doc. No. 11).

## BACKGROUND

Plaintiff Julian Shaw ("Plaintiff" or "Shaw"), seeks review of Defendant's decision denying him Social Security Disability Insurance Benefits ("SSDI") under, Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits ("SSI") under Title XVI of the Act.  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of low back pain and diabetes mellitus, but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 19). [2]  Defendant determined that even if Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, their alleged persistence and limiting effects by Plaintiff were not credible (R. 21), and that Plaintiff was able to return to Plaintiff's past relevant work as a security guard.  (R. 22).  The ALJ further determined that Plaintiff would need to establish disability before December 31, 2012, the date Plaintiff had sufficient quarters of coverage to meet insured status requirements, in order to establish a period of disability for SSDI benefits under Title II of the Act.  (R. 17).  The ALJ found Plaintiff

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on September 17, 2010.  (R. 22).

## PROCEDURAL HISTORY

On August 25, 2008, Plaintiff filed an application for disability insurance benefits under Title II of the Act (R. 17), and filed an application for supplemental insurance benefits under Title XVI of the Act on August 26, 2008.  Both applications alleged disability based on lower back pain and diabetes as of May 31, 2008.  (R. 101).  Plaintiff's applications were initially denied by Defendant on December 2, 2008 (R. 53), and, pursuant to Plaintiff's request filed January 26, 2009 (R. 60), a hearing was held before Administrative Law Judge William M. Weir ("Weir" or "the ALJ") on July 21, 2010 in Buffalo, New York.  (R. 29-49).  Plaintiff, represented by Melissa Pezzino, Esq., ("Pezzino"), appeared and testified at the hearing.  *Id*.  The ALJ's decision denying the claim was rendered on September 17, 2010.  (R. 14).

On September 30, 2010, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 12-13).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on July 5, 2012.  (R. 1-5).  This action followed on August 30, 2012, with Plaintiff alleging the ALJ erred by failing to find him disabled.  (Doc. No. 1).

Defendant filed an answer on December 19, 2012 (Doc. No. 7), and on May 20, 2013, filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum").  On May 20, 2013, Plaintiff filed a motion for judgment on the pleadings or alternatively, remand of

the matter for further development of the record ("Plaintiff's motion"), accompanied by a supporting memorandum of law (Doc. No. 11) ("Plaintiff's Memorandum").  On July 19, 2013, Plaintiff filed a Response/Reply to Defendant's motion for judgment on the pleadings (Doc. No. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED; Plaintiff's motion should be DENIED as to his request for judgment on the pleadings, and GRANTED as to his alternative request for remand for further clarification of the record consistent with this Report and Recommendation.

## **FACTS**[3]

Plaintiff Julian Shaw ("Shaw" or "Plaintiff") was born on August 3, 1975 (R. 95), completed two years of college (R. 145), and lives with his girlfriend, her daughter and nephew.  (R. 147).  Plaintiff's most recent work experience includes work as a cleaner. (R. 132, 159).  Plaintiff alleges he stopped working on May 31, 2008, because Plaintiff's lower back impairment and diabetes made him unable to do the work required.  (R. 140).

Relevant to the alleged period of disability, on June 13, 2008, Plaintiff visited Paul Garg, M.D. ("Dr. Garg") for a follow-up examination of Plaintiff's herniated disc.  (R. 306).  Plaintiff reported mild to moderate lower back pain, and, upon examination, Dr. Garg assessed Plaintiff with tenderness of the lumbar spine, with no neurovascular deficit, and limited and painful movement of the spine.  (R. 306).  Dr. Garg continued Plaintiff's prescriptions for Motrin and Lortab (pain), and advised Plaintiff to remain off work for two weeks.  *Id.*

---

[3] Taken from the pleadings and the administrative record.

On June 30, 2008, Plaintiff sought treatment for an ankle injury suffered after a fall down stairs (R. 247), from Millard Fillmore Suburban Hospital in Amherst, New York, where Cheryl Neely, M.D. ("Dr. Neely") reviewed an X-ray of Plaintiff's right ankle that revealed soft tissue swelling, and diagnosed Plaintiff with an ankle sprain.  (R. 250).

On July 21, 2008, Plaintiff returned to Dr. Garg reporting he had not returned to work and wanted another month off.  (R. 305).  During a visit to Dr. Garg on August 20, 2008, Plaintiff reported that he attended physical therapy for one or two sessions each month and wanted to return to light duty work.  *Id*.  On September 29, 2008, Plaintiff reported his employer would not give him light duty work.  (R. 304).

On October 29, 2008, Plaintiff visited Dr. Garg reporting continued lower backache for a week.  (R. 304).

On November 25, 2008, Jitendra M. Sanghvi, M.D. ("Dr. Sanghvi"), reviewed an X-ray of Plaintiff's lumbar spine that showed mild scoliosis of Plaintiff's spine with normal disc spaces.  (R. 233).

On November 25, 2008, Jacob Piazza, M.D. ("Dr. Piazza"), completed a consultative internal medical examination on behalf of the Social Security Administration ("SSA"), and assessed Plaintiff with a slow gait, able to walk on heels and toes without difficulty, no limp (R. 230), and full flexion, extension and flexion bilaterally with full rotary movement of Plaintiff's cervical spine.  (R. 231).  Dr. Piazza measured Plaintiff's lumbar spine range of motion ("ROM") at 60 degrees upon flexion, 5 degrees upon extension, 30 degrees right lateral extension, 20 degrees left lateral extension, and 25 degrees of bilateral rotary movement, with straight leg raising measured at 30 degrees in standing and sitting positions.  *Id*.  Dr. Piazza assessed Plaintiff with a moderate to

severe limitation for lifting and bending, and moderate limitation to standing and sitting. (R. 232).

On December 24, 2008, Plaintiff visited Jericho Road Family Practice ("Jericho Road"), a community health center in Buffalo, New York, to establish medical care, where Zahrain R. Hall, M.D. ("Dr. Hall") noted that Plaintiff reported being born anatomically female, but was presently living outwardly as male, and wished to re-convene hormone injection therapy and pursue sexual identity reassignment surgery. (R. 338).

On February 18, 2009, Plaintiff sought treatment from Millard Fillmore Gates Hospital for abdominal pain, where Plaintiff was diagnosed with pneumonia and a stomach virus.  (R. 251-54).

On February 25, 2009, Plaintiff returned to Jericho Road for a follow-up evaluation of Plaintiff's pneumonia and reported he had not begun physical therapy as the referred therapy office did not accept Plaintiff's insurance.  (R. 332).  Plaintiff received diabetes and smoking cessation education.

On May 5, 2009, Physical Therapist Kathleen Aeblscher ("PT Aeblscher") completed a physical therapy evaluation on Plaintiff and assessed Plaintiff with lumbar radiculopathy with pain, and early sensory and possible motor neuropathy that affected Plaintiff's gait and activities of daily living.  (R. 347).  On June 4, 2009, PT Aeblscher discharged Plaintiff as a patient noting Plaintiff had cancelled three therapy sessions as a result of poor glucose management (R. 349), and did not return telephone calls to reschedule Plaintiff's missed appointments.

On July 21, 2009, Plaintiff visited Jericho Road with back pain (R. 322).  Plaintiff returned to Jericho Road on September 2, 2009, and reported that he did not undergo the suggested X-rays as the location was too far from his home.  (R. 320).  Plaintiff was assessed with unspecified backache, diabetes mellitus without complications and diabetic polyneuropathy.  (R. 320-32).

On December 14, 2009, Plaintiff visited Jericho Road and reported back pain while standing for longer than 10 minutes, walking one block, sitting for more than 30 minutes, or lifting greater than 10 pounds, with no swelling, joint stiffness, tenderness, tingling or weakness.  (R. 315).  Plaintiff requested Medicaid forms for transportation. *Id*.  Upon examination, a medical treatment provider[4] at Jericho noted that Plaintiff had not complied with Dr. Hall's prescription for physical therapy, and that Plaintiff's disability forms should not be completed if Plaintiff continued to be non-compliant with Dr. Hall's recommendations for treatment.  (R. 316).

On May 14, 2010, Natalie Bousader Armstrong, M.D. ("Dr. Armstrong"), a treatment provider with Lifetime Health Medical Group ("Lifetime Health"), completed a physical examination of Plaintiff for symptoms of sore throat, body aches and headache. (R. 379).  Plaintiff returned to Lifetime Health on July 14, 2010 for diabetic follow-up, and reported a decrease in hypoglycemic episodes, and self-tapering of Plaintiff's gabapentin (nerve pain) medication that resulted in increased neuropathy.  (R. 371).

On September 16, 2010, Plaintiff visited West Seneca Health Center ("West Seneca Health") for a diabetic podiatry examination, where Plaintiff was assessed with a left toenail fungal infection and advised to wear protective footwear.  (R. 382).

---

[4] The name of the treatment provider is not legible in the record.

Additional medical evidence submitted for Appeals Council review includes Plaintiff's September 16, 2010 podiatry visit to West Seneca Health Center where Plaintiff was diagnosed with a hazardous foot condition, dystrophic nails, onychomycosis (fungal infection of nail), and hyperkeratosis (thickening of skin), instructed to wear protective shoes, and prescribed extra-depth diabetic shoes for insensitive feet.  (R. 382).  The Appeals Council further considered Plaintiff's visits to Atwal Eye Care on November 4, 2011 (R. 397-99) where Plaintiff was diagnosed with diabetic retinopathy, and on November 9, 2011 (R. 389), where Plaintiff received laser surgery and Avastin injection for diabetic retinopathy, physical therapy treatment at Erie County Medical Center on March 15, 2011, and psychiatric evaluations on November 7, 2011 (R. 411-17), and January 14, 2012, from Lake Shore Behavioral Health where Plaintiff was diagnosed with severe major depressive disorder and evaluated with a Global Assessment of Functioning ("GAF") [5]  GAF score of 55. (R. 406-10).

## DISCUSSION

**1.     Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can

---

[5] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. http:// *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or social functioning (*e.g.*, no friends, unable to keep a job) . . . A GAF of 51-60 [indicates] moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR at 32.

> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant.  *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.    Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion."  *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[6] if

supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520

and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.

Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the

applicant is engaged in substantial gainful activity during the period for which benefits

are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in

such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

The next step is to determine whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities as defined in

the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the

regulations and meets the duration requirement, the individual is deemed disabled,

regardless of the applicant's age, education or work experience, 20 C.F.R. §§

404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

with such an impairment is unable to perform substantial gainful activity.[7] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was

---

[7] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

substantial evidence on which the Commissioner based the decision.  20 C.F.R. §

416.935(a); *Richardson*, 402 U.S. at 410.

**B.**    **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in

substantial gainful activity since May 31, 2008, the alleged onset date of disability.  (R.

19).  Plaintiff does not contest this determination.

**C.**    **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability

claimant had a severe medically determinable physical or mental impairment that meets

the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits

the claimant's ability to do "basic work activities."  If no severe impairment is found, the

claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do

most jobs," and includes physical functions like walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and

speaking; understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined Plaintiff had the severe impairments of low back pain and diabetes mellitus as defined under 20 C.F.R. § 404.1520(c) ("§ 404.1520(c)"). (R. 19).  The ALJ further determined that Plaintiff's polyneuropathy and gender disorder were not severe impairments as there was little evidence either impairment impacted Plaintiff's vocational ability.  (R. 19).

Plaintiff does not contest the ALJ's finding that Plaintiff's back pain and diabetes mellitus are severe, but contests the ALJ's finding that Plaintiff's neuropathy is non-severe.  Plaintiff's Memorandum at 7.  Defendant does not address Plaintiff's contention that the ALJ's failure to include Plaintiff's neuropathy requires remand for further evaluation of the record.  Plaintiff's contention is supported by substantial evidence in the record.  In particular, Plaintiff's electromyography ("EMG") test results revealed that diabetes-related neuropathy.  (R. 320).  On November 25, 2008, Dr. Garg assessed Plaintiff with a moderate limitation for standing (R. 232), and on November 4, 2009 evaluated Plaintiff with back pain when standing for more than 10 minutes, but no joint pain, stiffness, swelling, tenderness, or tingling.  (R. 319).  On July 19, 2010, Dr.

Armstrong diagnosed Plaintiff with neuropathy (R. 372), and Plaintiff testified that he was unable to work on a full-time basis because of numbness in his hands and feet. (R. 32). A recommendation from West Seneca Health suggested that Plaintiff wear protective footwear to avoid foot injury (R. 382), and a podiatry examination on September 16, 2010 (R. 5), revealed Semmes-Weinstein[8] test results indicating that Plaintiff's neuropathy was likely to result in ulceration or amputation of one or both of Plaintiff's feet. (R. 382). The ALJ's determination that Plaintiff's neuropathy was not a severe impairment is therefore contrary to substantial evidence in the record.

Plaintiff's motion, in the alternative, should be GRANTED, with remand to afford the ALJ the opportunity to consider Plaintiff's neuropathy a severe impairment under step two, and under the remaining steps of the disability analysis.

Should the district judge not agree with the undersigned's recommendation for remand, in the interest of completeness, the undersigned proceeds to review the next step of the ALJ's disability review process in the alternative.

## D. Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d.

---

[8] Semmes-Weinstein is a diagnostic tool that uses monofilament to predict the likelihood of future foot ulceration or amputation in patients with diabetic mellitus. Contrary to Plaintiff's contention otherwise, Plaintiff's Memorandum at 13, nothing in the record indicates that Plaintiff's podiatrist at West Seneca Health maintained a separate record of Plaintiff's in-office Semmes-Weinstein test.

45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, §1.04 ("§ 1.04") (Disorders of the Spine), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 §9.08 ("9.08") (Diabetes Mellitus).  In the instant case, the ALJ, without discussion, determined that Plaintiff's impairments do not meet or equal the criteria necessary to establish disability under §§ 1.04, or 9.08.  (R. 20).

Plaintiff contends that the ALJ's failure to consider Plaintiff's neuropathy as a severe impairment in Step 2 of the disability analysis requires remand as such error resulted in the ALJ's failure to make a finding on Plaintiff's ability to walk.  Plaintiff's Memorandum at 8.

To be considered disabled as a result of diabetes mellitus, a disability claimant's diabetes mellitus must be accompanied by

A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or $PCO_2$ or bicarbonate levels); or
C. Retinitis proliferans; evaluate the visual impairment under the criteria under 2.02, 2.03, or 2.04.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 9.08 ("§ 9.08").

To be considered disabled as a result of a neurological impairment, the Act requires evidence of

Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia, and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decisions in neurological

impairment.  The assessment of impairment depends on the degree of
interference with locomotion and/or interference with the use of fingers, hands,
and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00C ("§ 11.00C").

In this case, substantial evidence in the record supports a conclusion that Plaintiff's

diabetes mellitus and resulting neuropathy meet the criteria for disability under § 9.08A

and

§ 11.00C of the Act.

     In particular, Plaintiff testified that pain and numbness in Plaintiff's lower

extremities resulted in Plaintiff's inability to walk for more than 10 minutes at a time (R.

36), walk a block without resting and shop for groceries.  (R. 41).  On November 25,

2008, Dr. Piazza assessed Plaintiff with a moderate limitation for standing and sitting,

and a moderate to severe limitation for lifting and bending.  (R. 232).  On September 16,

2010, Plaintiff sought treatment for numbness and burning sensation of his hands and

feet (R. 382) from West Seneca Health Center, where an unnamed podiatrist opined

that Plaintiff's Semmes-Weinstein test results indicated that Plaintiff's feet had abnormal

protective sensation to 10 grams of bilateral and symmetric pressure, resulting in a

hazardous foot condition that required extra depth diabetic shoes for insensitive feet.

(R. 382).  Evidence that Plaintiff's diabetes mellitus caused Plaintiff to experience

sensory disturbances (decreased pinprick, sensation, numbness and weakness)

indicates "disorganization of motor function" consistent with the criteria required under

 §§ 9.08 and 11.00C.  *See Wood v. Colvin*, 987 F. Supp.2d 180, 195 (N.D.N.Y. 2013)

(sensory disturbances like foot insensitivity indicate disorganization of motor function

consistent with the criteria under sections §§ 9.08 and 11.00C) (citing *Lazo-Espinoza v. Astrue*, 2012 WL 1031417, at *9 (N.D.N.Y.2012)).

Moreover, in this case, the ALJ provided no explanation of whether evidence of Plaintiff's neuropathy was enough to meet or medically equal the criteria to be deemed disabled under §§ 9.08 or 11.00C of the listed impairments.  Rather, without explanation, the ALJ determined that Plaintiff

> does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpt P, Appendix 1 (20 CFR 404.1520(d), and 404.1525, 404.1526, 416.920(d), 416.925 and 416.926[]).  The undersigned specifically considered listings 1.04 and 9.08 and finds the diagnostic criteria are not met.

(R. 19-20).

 Such conclusory statements make it impossible for the court to discern whether the ALJ's decision is based on the correct application of legal principles or supported by substantial evidence in the record, and require remand for further development of the record.  *See Wood*, 987 F.Supp.2d 180 at 195-96 (remand where reviewing court could not discern whether ALJ's decision was based on proper legal principles); *Lazo-Espinoza,* 2012 WL 1031417, at *10 (remand where ALJ failed to support a conclusion Plaintiff's condition was not a severe impairment).

Upon remand, the ALJ should evaluate with sufficient explanation, whether Plaintiff's impairments of diabetes mellitus and peripheral neuropathy evidenced in the record, meet or medically equal the criteria for disability under §§ 9.08 and 11.00C of the Act, as well as any other applicable listed impairments the record suggests Plaintiff's impairments may match.  Plaintiff's alternative motion to remand on this issue should be GRANTED.

Should the district judge disagree with the undersigned's foregoing recommendation for remand, in the interest of completeness, the undersigned continues to review the next step of the ALJ's disability review process in the alternative.

## E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work.  "Residual functional capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity.  *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. 1986).

In this case, the ALJ determined Plaintiff has the residual functional capacity to perform the full range of "light"[9]  work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b).  (R. 20).  Plaintiff contends the ALJ's residual functional capacity is without substantial evidence as such determination failed to make findings to Plaintiff's ability to walk or stand. Plaintiff's Memorandum at 8. Plaintiff further contends that Plaintiff's previous work as a security guard does not amount to past relevant work.  Plaintiff's Memorandum at 17.

The Second Circuit has not yet ruled on whether a disability determination that does not expressly include discussion of the claimant's capacity to perform work-related functions listed under 20 C.F.R. 404.1545 (a)(b)(c)(d), is *per se* grounds for remand. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  Nevertheless, remand is appropriate in instances where an ALJ's evidentiary determination is not fathomable and requires credibility and inference drawing by the ALJ.  *See Cichocki*, 729 F.3d at

---

[9] "Light work" is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job is considered "light" when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of  arm or leg controls.  20 C.F.R. § 404.1567(b).

177.  Such is the case here, and the undersigned proceeds to discuss each issue in turn.

**Evidentiary findings of Plaintiff's RFC**

In this case, the ALJ's Step Four analysis includes consideration of Plaintiff's testimony that Plaintiff was not able to lift over 10 pounds, was able to sit for 30 minutes at a time, and walk for 10 to 15 minutes at a time.  (R. 20).  The ALJ included a summary of Dr. Piazza's November 25, 2008 examination of Plaintiff where Plaintiff exhibited "reduced range of motion and [] moderate limitations. Grip strength was 5/5 and hand and finger dexterity were intact. The claimant's gait was normal, he could heel/toe walk, get changed without difficulty, [and] get on and off the changing table without difficulty."  (R. 21).  The ALJ's consideration of such assessment however, failed to include Dr. Piazza's determination that Plaintiff had a moderate to severe limitation to lifting and bending and moderate limitation to standing and sitting.  (R. 232).  Similarly, the ALJ included some, but not all, of the evidence from Plaintiff's emergency room visit on April 28, 2008 (R. 20), denoting Dr. Carter's notes as "claimant could stand heel/toe and vertebral tenderness was not appreciated" to the exclusion of Dr. Carter's diagnoses of herniated disc (R. 221) and subluxation of Plaintiff's S1-S2 nerve root.  (R. 226).  Inasmuch as the ALJ possessed Plaintiff's complete medical history during the administrative review, *See Rosa v. Callahan*, 168 F.3d 72, 79 n. 5, (2d Cir. 1999), the ALJ's sheer speculation that Dr. Piazza's attributed the meaning of Plaintiff's "moderate to severe" limitation to lifting and bending, to "mild to moderate pain or discomfort" (R. 21), and mischaracterization of Plaintiff's emergency room visit on April 28, 2008, requires remand.  *See Selian v. Astrue*, 708 F.3d 409, 412 (2d Cir. 2013) (remand to

allow ALJ to re-contact claimant's physician to clarify vague terms); *Caternolo v. Astrue*, 2013 WL 1819264, at * 9 (W.D.N.Y. April 29, 2013) (ALJ may not pick and choose only parts of a medical opinion (citing *Nix v. Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009))).  Moreover, the ALJ's RFC assessment of Plaintiff in this case, based in part on faulty step two and step three determinations also requires reconsideration.  *See Proper v. Commissioner of Social Security*, 2014 WL 7271650, at 14 (W.D.N.Y. Dec. 18, 2014) (ALJ error at steps two and three require reconsideration of RFC).

Upon remand, the ALJ's residual functional capacity assessment of Plaintiff should include Plaintiff's peripheral neuropathy, the entirety of Plaintiff's visit to the emergency room on April 28, 2008, clarification of Dr. Piazza's consultative examination of Plaintiff on November 25, 2008, in relation to Plaintiff's ability to stand and walk, and the effects of such abilities on Plaintiff's residual functional capacity.  20 C.F.R. § 404.1520b(c)(1).

**Past relevant work**

In this case, the ALJ determined that Plaintiff was capable of performing Plaintiff's past relevant work as a security guard, as such work required Plaintiff to lift no more than 10 pounds or walk or stand for greater than four hours.  (R. 22).  Plaintiff contests such finding, alleging that the ALJ's determination failed to include specific findings in accordance with Social Security Ruling 82-62, and include a finding whether Plaintiff's past work as a security guard amounts to past relevant work under 20 C.F.R. § 404.1560(b)(1).  Plaintiff's Memorandum at 17-18.

20 C.F.R. § 404.1560 defines past relevant work as "work that you have done in the past 15 years, that was substantial gainful activity, and lasted long enough for you to

learn to do it." 20 C.F.R. § 404.1560(b)(1).  Substantial gainful activity is work that is

both substantial and gainful:

> (a) Substantial work activity. Substantial work activity is work activity that
> involves doing significant physical or mental activities. Your work may be
> substantial even if it is done on a part-time basis or if you do less, get paid
> less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay
> or profit. Work activity is gainful if it is the kind of work usually done for pay or
> profit, whether or not a profit is realized.

20 C.F.R. § 416.972(a)(b).

In this case, Plaintiff was employed as a janitor from October 2006 through May 2008,

assembly worker in 2005, a mall security guard from 2003 until 2004, and retail

associate from 2000 until 2001.  (R. 158).  Plaintiff submits that the longest duration job

that Plaintiff worked was as a security officer from 2003 until 2005 (R. 141), work that

required four hours of walking and standing, two hours of sitting, and lifting no more

than 10 pounds.  (R. 141).

The SSA has cautioned that determining a claimant's capacity to do past relevant

work requires, at least, "a careful appraisal of (1) the individual's statements as to which

past work requirements can no longer be met and the reason(s) for his or her inability to

meet those requirements; [and] (2) medical evidence establishing how the impairment

limits ability to meet the physical and mental demands of the work." Social Security

Ruling 82-62, Titles II and XVI: A Disability Claimant's Ability to Do Past Relevant Work,

in General ("SSR 82-61"), 1982 WL 31386, at *3 (S.S.A. 1982).  The SSA further

provides that determinations whether a claimant retained the ability to perform past

relevant work should include whether the claimant retained 1) the capacity to perform a

past relevant job based on a broad generic classification of that job; (2) the capacity to

perform the job as he or she actually performed it; or (3) the capacity to perform the functional demands and job duties of the past relevant job as ordinarily required by employers throughout the national economy.  *See* Social Security Ruling 82-61, Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation As Generally Performed ("SSR 82-61"), 1982 WL 31387, at *2 (S.S.A. 1982).

In this case, the ALJ determined that Plaintiff was capable of performing Plaintiff's past relevant work as a security guard work, as such work required Plaintiff to lift no more than 10 pounds, or walk or stand for more than four hours.  (R. 22).  Such determination is contrary to substantial evidence in the record.

Plaintiff's symptoms of neuropathy that include tingling and numbness of Plaintiff's hands and feet, are supported by Plaintiff's Semmes-Weinstein (R. 382), and EMG test results.  (R. 32).  Plaintiff's treating physicians consistently prescribed medication to treat Plaintiff's neuropathy that included amitriptyline (R. 232, 336), Neurontin (R. 319), and Gabapentin.  (R. 376).  Significantly, Dr. Piazza's consultative examination of Plaintiff, completed on behalf of the SSA, assessed Plaintiff with a moderate to severe limitation to lifting and bending, and moderate limitation to standing and sitting.  (R. 232).

Work as a security guard, as typically performed, is considered "light work" and involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

SSR 83-10 provides that "the full range of light work requires standing, off and on, for approximately 6 hours of an 8 hour workday."  Social Security Ruling 83-10, Titles II and XVI: Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2 (SSR 83-10), 1983 WL 31251, at *5 (S.S.A. 1983).

In this case, the ALJ's determination that Plaintiff is capable of light work, inconsistent with Dr. Piazza's opinion that Plaintiff has a "moderate to severe" limitation to lifting and bending, and "moderate" limitation to sitting and standing (R. 232), and Plaintiff's persistent symptoms of neuropathy, requires remand.  *See Selian*, 708 F.3d at 421.  Upon remand, the ALJ should re-contact Dr. Piazza to seek clarification of Dr. Piazza's report on Plaintiff's ability to lift, bend, sit and stand.  20 C.F.R. § 404.1520b(c)(1).

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record established that Plaintiff has the severe impairment of lower back pain and diabetes mellitus, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent inconsistent with Plaintiff's testimony.  (R. 22).  Plaintiff contests the ALJ's credibility determination, specifically, that such determination derived from the ALJ's improper residual functional capacity assessment, Plaintiff's Memorandum at 14, and included Plaintiff's treatment non-compliance without required explanation. Plaintiff's Memorandum at 16.

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013).

Pain or other symptoms may be important factors contributing to a disability claimant's functional loss, and affect a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms" *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).

In this case, Defendant correctly asserts that the ALJ is entitled to consider non-compliance with treatment a factor in Plaintiff's credibility assessment.  Defendant's Memorandum at 21.  In cases such as here, however, where financial need is at issue, the ALJ has a duty to inquire about the claimant's explanations for treatment non-compliance.  *See Young v. Commissioner of Social Security*, 2014 WL 3107960, at *11 (W.D.N.Y. July 8, 0214).

In this case, the ALJ's credibility assessment of Plaintiff fails to consider Plaintiff's reasons for non-compliance with treatment.  In particular, the ALJ considered Dr. Armstrong's treatment notes indicating that Plaintiff's fluctuating blood glucose levels were a likely a consequence of Plaintiff's poor dietary habits (R. 370), but did not include that Plaintiff denied skipping meals (R. 371), and was not able to afford his diabetes test materials.  (R. 229).  The ALJ's determination that Plaintiff was dropped from physical therapy treatment for poor attendance also failed to consider evidence

that Plaintiff cancelled three sessions as a result of illness and poor glucose

management.  (R. 349).  Moreover, the ALJ's speculation that Plaintiff's smoking

decreases blood flow to Plaintiff's extremities is a medical opinion the ALJ may not put

forth in the absence of a supporting medical opinion.  *See Balsamo v. Chater*, 142 F.3d

75, 81 (2d Cir. 1998) (citing *Folicomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y. 1996)

(ALJ may not make medical findings in the absence of supporting medical opinion)).

Remand should be granted to afford the ALJ the opportunity to assess Plaintiff's

credibility based on a residual functional capacity assessment that includes Plaintiff's

neuropathy and explanations for non-compliance with treatment, exclusive of medical

findings by the ALJ not supported by expert medical opinion.

Accordingly, Plaintiff's motion, treated in the alternative as seeking remand, should be

GRANTED as to the issue of Plaintiff's credibility.

## F. <u>Suitable Alternative Employment in the National Economy</u>

Once an ALJ finds a disability claimant does not have a severe medically

determinable physical or mental impairment , 20 C.F.R. § § 404.1520(a)(4)(ii), that

significantly limits the claimant's physical and mental ability to do work activities, *Berry*,

675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to

meet the criteria established for an impairment listed under Appendix 1, the burden

shifts to the Commissioner to show that despite the claimant's severe impairment, the

claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § §

404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to

perform in light of the claimant's physical capabilities, age, education, experience, and

training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).  To make such a

determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[10] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a

---

[10] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Because the ALJ determined Plaintiff could perform his past relevant work, the ALJ did not consider whether Plaintiff had the residual functional capacity to perform any other work.  Accordingly, upon remand, should the ALJ reach this fifth step of the analysis, the ALJ should consider the entirety of evidence in the record in determining whether Plaintiff, despite his severe impairments, retains the residual functional capacity to perform suitable alternative work available in the national economy.

## CONCLUSION

Based on the foregoing, Defendant's motion should be DENIED; Plaintiff's motion should be DENIED as to judgment on the pleadings, and GRANTED as to the alternative request for remand, and the matter remanded in accordance with this Report and Recommendation.

Respectfully submitted,

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        March 6, 2015
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      March 6, 2015
            Buffalo, New York